Filing # 186649327 E-Filed 11/21/2023 09:09:26 PM

IN THE CIRCUIT COURT OF THE 20th JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA

DKG COMMUNICATION, LLC,

    PLAINTIFF.

v.

CASE NO: _____

RLM UNDERGROUND, LLC,

    DEFENDANT.

## COMPLAINT

COMES NOW, Plaintiff, DKG COMMUNICATION, LLC, (hereinafter "Plaintiff") by and through undersigned counsel, and hereby sues Defendant RLM UNDERGROUND, LLC, (hereafter "Defendant") and alleges the following:

### PARTIES, JURIDICTION AND VENUE

1. Plaintiff is a Florida limited liability company registered and authorized to do business in the State of Florida. Plaintiff is domiciled in Lee County, Florida.

2. Defendant is a Kansas limited liability company subject to personal jurisdiction, in accordance with Florida Statutes § 685.102 and § 48.193. Pursuant to the signed contractual agreement between Plaintiff and Defendant, attached hereto as EXHIBIT A, Defendant both engaged in activities that establish personal jurisdiction under Florida law, by soliciting business from Florida and by consenting to Florida in part by contractual choice of law (*see EXHIIT A, #25*). Defendant may be served with citation by serving its registered agent, MLF Business Services, LLC, at the address on file with the Kansas Secretary of State at 10801 Mastin Street, Suite 790. Overland Park, KS 66210.

3. This Court has jurisdiction over the subject matter of this action because it (1) involves a dispute over an agreement entered in Lee County, Florida, (2) Plaintiff is domiciled and has its principal place of business in Lee County, and (3) Defendant consented to subject matter jurisdiction in Lee County under the contractual agreement at issue in this case.

4. The damages sought in this action are in excess of $50,000.00, exclusive of costs, interest, and attorneys' fees.

5. Venue is appropriate in this Court under Fla. Stat. 47.051 because the agreement subject to the complaint and all parties are either located in Lee County, Florida or consented via contractual agreement to bring any causes of action, in part, in Lee County, Florida.

## FACTS

6. On or about July 22, 2021, Plaintiff entered into a Contractual Agreement with Defendant to perform work. A copy of the Contractual Agreement is attached as Exhibit A. Pursuant to the Contractual Agreement, 10% retainage was to be paid, if requested, three hundred and sixty-five (365) days from the original invoice date.

7. On September 22, 2023, Plaintiff provided the required request, well in excess of the original invoice date. A copy of this required request is attached as EXHIBIT B.

8. To date, no retainage payments have been made to Plaintiff by Defendant.

9. Plaintiff has calculated that the 10% retainage equates to $500,360.68, based on the original invoice of $5,003,606.00.

10. All conditions, precedent to the filing of this Complaint have been performed, have occurred, or have been waived.

11. Plaintiff was required to engage the undersigned Counsel and is obligated to pay its attorney a reasonable fee.

## COUNT ONE
## BREACH OF CONTRACT

12. Plaintiff adopts and re-alleges each and every allegation in each and in paragraphs 1 through 9 and further alleges:

13. Defendant, on or about July 22, 2021, executed and delivered to Plaintiff a Contractual Agreement to perform work. This Contractual Agreement specified a 10% retainage to be returned to Plaintiff, upon request, three hundred and sixty-five (365) days from the original invoice date.

14. On September 22, 2023, Plaintiff provided the required request.

15. To date, Defendant owes to Plaintiff the entire $500,360.68 retainage amount, plus interest, costs, and fees.

16. As a direct and proximate result of the breach, Plaintiff has suffered damages.

WHEREFORE, and by reason of the foregoing, Plaintiff demands judgment against Defendant for damages, and for such other further and additional relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that any and all issues related in this cause shall be resolved by jury trial.

Dated: November 21, 2023

                         Respectfully submitted,

                         By: /s/ Cassandra D. Jude, Esq.
                         Cassandra D. Jude, Esq.
                         **ATTORNEY FOR PLAINTIFF**
                         Florida Bar No. 1032253
                         The Jude Law Firm, PLLC
                         3236 Forum Blvd, #1240
                         Fort Myers, FL 33905
                         (239) 933-1838
                         Email: cassandra@judeinjury.com

11/29/2023 8:17 AM FILED LEE COUNTY CLERK OF COURT

IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACTION

CASE NO: 23-CA-012853

DKG Communications LLC   Plaintiff vs RLM Underground LLC   Defendant
_____/

### STANDING ORDER IN CIRCUIT CIVIL CASES IN THE TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.** The Plaintiff is directed to serve a copy of this order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with proof of service. The Plaintiff shall pay the appropriate statutory clerk's fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.** The Supreme Court of Florida has established guidelines for the prompt processing and resolution of civil cases. This Court has adopted a case management system to help meet those guidelines. In contested cases (other than residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are required to participate in the case management system. The Court will issue a Case Management Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed Case Management Plan that has been approved by the Court. However, if it becomes necessary to amend the court-issued Case Management Plan, the parties may submit an Agreed Case Management Plan, subject to approval by the Court, or if the parties cannot agree on an Amended Plan, the parties may request a case management conference. The form of the Agreed Case Management Plan may be accessed at the Court's website at: https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case management conference is scheduled, attendance by trial counsel and those parties who are not represented by counsel is mandatory. Agreed Case Management Plans are to be submitted to Lee County Civil Case Management by email in Word format to LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).** ADR provides parties with an out-of-court alternative to settling disagreements. The Court requires the parties to participate in ADR prior to trial. Mediation is mandatory unless the parties agree to another form of ADR. Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties. The Court, at its discretion, may order the case be referred to Non-Binding

Rev. 7/1/2023

11/29/2023 8:17 AM FILED LEE COUNTY CLERK OF COURT

IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                                  CIVIL ACTION

Arbitration. Non-Binding Arbitration is the process in which the court refers a case to a registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to Fla.R.Civ.P. 1820(h).

      4. **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a case if there is no record of activity within a ten (10) month period of time.

      5. **RULES OF PROFESSIONALISM.** The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel practicing within the Circuit and self-represented litigants. The Court requires that all familiarize themselves and comply with Administrative Order 2.20. Administrative Order 2.20 may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp

      **DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.

                                                  *Michael T. McHugh (electronically signed)*
                                                            Administrative Circuit Judge

****Original on file in the office of the Circuit Court Administrative Judge, Lee County

Rev. 7/1/2023

Filing # 186649327 E-Filed 11/21/2023 09:09:26 PM

EXHIBIT A



## CONTRACT AGREEMENT

THIS AGREEMENT is between RLM Underground, LLC ("OWNER") and DKG Communication LLC ("CONTRACTOR"), regarding work to be performed by CONTRACTOR, as an independent contractor to OWNER, as part of the project of with RLM Underground, LLC.

In consideration of the mutual promises and covenants, OWNER and CONTRACTOR agree, as follows:

1. DESCRIPTION OF WORK -- Except as otherwise provided in this AGREEMENT, CONTRACTOR shall provide all labor, labor supervision, construction equipment, transportation, licenses, permits, taxes, safety and consumable supplies for the performance and completion of installation of the fiber-optic line on the Project, to the extent necessary to complete the work specified in the Scope of Work.

2. OWNER -- The term "OWNER" means the OWNER or the OWNER's authorized representative.

    2.1 OWNER shall designate, in writing, a representative or representatives and their individual authority to bind the OWNER with respect to matters requiring the OWNER's approval or authorization on the Project. CONTRACTOR shall not rely on the directions from any person on behalf of OWNER except for those representatives so identified by OWNER in writing. OWNER hereby designates Lee Mudd OWNER representative.

    2.2 OWNER shall furnish to CONTRACTOR, and bear all cost of:

        2.2.1 Full information regarding OWNER's requirements for the Project, including without limitation, all design and engineering by properly licensed professionals and Final Design for the Work;

        2.2.2 All environmental permits, including DOT, Railroad, ditch/canal crossing permits/agreements, and right-of-way permits/agreements required for construction, use or occupancy of the Project;

        2.2.3 All surveys, describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. CONTRACTOR shall be entitled to rely on the accuracy of information furnished by OWNER; and

        2.2.4 All materials or supplies required for the Work (except consumables during construction), which OWNER shall cause to be delivered to CONTRACTOR at such locations along the alignment of the Work, as CONTRACTOR shall designate.

    2.3 OWNER shall furnish information or services required of OWNER by the AGREEMENT, with reasonable promptness. OWNER shall also furnish any other information or services under OWNER's control and relevant to CONTRACTOR's performance of the Work, with reasonable promptness, after receiving CONTRACTOR's written request for such information or services.

3. CONTRACTOR -- The term "CONTRACTOR" means the CONTRACTOR or the CONTRACTOR's authorized representative.

    3.1 CONTRACTOR shall designate, in writing, a representative who shall have express authority to bind CONTRACTOR with respect to all matters under this AGREEMENT. CONTRACTOR hereby designates KAPD as CONTRACTOR's representative.

and duct plugs.

    3.3 CONTRACTOR shall provide redline as-builds on prints provided by OWNER, GPS locations of all hand holes placed on the Project and bore logs for any required bores.

    3.4 CONTRACTOR will complete restoration, which shall consist of: (1) backfilling and walking down plowed or trenched areas with tracked vehicles, (2) mechanically compacting road crossings, if they are open cut or trenched and (3) reseeding areas, as required, by broadcast method. CONTRACTOR will not be required to hydro-seed.

    3.5 CONTRACTOR will be responsible for all other permits, and City and County permits not specified in section 2.2.2.

    3.6 CONTRACTOR shall be responsible for all local fees or charges or labor rates, including prevailing wage requirements.

4. OWNER'S VERIFICATION OF FINANCING FOR THE PROJECT -- If requested in writing, prior to Notice to Proceed and commencement of the Work, OWNER shall furnish to CONTRACTOR, documentation that OWNER has made financial arrangements to fulfill OWNER's obligations under the AGREEMENT. Thereafter, CONTRACTOR may request renewal of such evidence, if CONTRACTOR identifies in writing a reasonable concern regarding OWNER's ability to make payment when due. OWNER shall furnish such documentation as a condition precedent to commencement of the Work.

5. COMPENSATION AND METHOD OF PAYMENT -- OWNER shall receive weekly billing invoices from CONTRACTOR for Work performed and completed. OWNER shall pay CONTRACTOR 30 after invoice date for the Work performed on the weekly Invoice Statement. Required for billing is as builds, invoices and Manager approval. OWNER shall have the right to inspect the Work to verify percentage of completion. 10% retainage will be held from each progress payment until fiber is tested, then retainage will be released. Retainage may be requested 365 days from original invoice date.

6. OWNER'S FINALIZATION OF DESIGN AND PERMITS -- At the time of the Parties' execution of this AGREEMENT, OWNER has completed final design and is providing CONTRACTOR with Notice To Proceed (NTP) immediately.

7. CONTRACT TIME -- CONTRACTOR shall commence the Work on site, within 10 days of OWNER's Notice to Proceed ("NTP").

8. CHANGES TO THE WORK -- OWNER may add or delete to the Scope of CONTRACTOR's Work, by directing changed work to CONTRACTOR. If OWNER and CONTRACTOR agree and execute a written Change Order for cost and time adjustment due CONTRACTOR for such changed work, OWNER shall pay CONTRACTOR for such changed work, based upon the actual costs incurred by CONTRACTOR to perform the changed work, plus a Contractor's Fee of 10% of such cost and grant CONTRACTOR equitable extension of the Contract Time to accommodate such changed work, as provided in such written Change Order. OWNER shall not be responsible for any change in the Work executed by CONTRACTOR unless OWNER agreed to such change in a written Change Order signed by OWNER.

9. SUBCONTRACTS -- CONTRACTOR may subcontract any portion of its scope of the Work, provided, however, that CONTRACTOR, in writing, shall supply a list of any such subcontractors to OWNER, and a description of the scope of work being subcontracted (to the satisfaction of OWNER), prior to engaging any such subcontractors, and OWNER shall have the right to disapprove any subcontractor, or the scope of work, within three (3) business days after receipt of such list.

To the benefit of the OWNER, CONTRACTOR represents, warrants and guarantees that CONTRACTOR, and all subcontractors utilized by CONTRACTOR, at all times during the Work, shall comply with and meet or exceed all requirements and policies of OWNER, the Project design, and the Project beneficiary entity, (e.g. school district). CONTRACTOR acknowledges that OWNER's failure to disapprove of any subcontractor shall not be deemed to be any representation, or waiver, by OWNER that such subcontractor satisfies the foregoing representation, warranty and guarantee, and that CONTRACTOR is solely responsible for ensuring such compliance.
CONTRACTOR acknowledges that the foregoing representation, warranty and guarantee is a material term of this

Project, as well as significant damage to OWNER's reputation and goodwill. Therefore, CONTRACTOR agrees to indemnify, defend and hold harmless the OWNER from and against any claims, damages, demands, losses, costs and expenses (including reasonable attorney fees, costs of litigation and damages) incurred or suffered by OWNER as a result of any failure of the foregoing representation, warranty and guarantee, including any damages incurred by OWNER and all lost profits suffered by OWNER as a result of OWNER's loss of the Project or any pending future project.

CONTRACTOR shall provide a copy of its liability insurance showing an endorsement that any subcontractors retained by the CONTRACTOR are additional insureds. CONTRACTOR shall provide OWNER with copies of proof of liability insurance, and bonds, of any subcontractor. CONTRACTOR is responsible for assuring that any subcontractor maintains workers' compensation insurance for any employee, and CONTRACTOR, hereby, affirmative agrees that the CONTRACTOR shall fully indemnify and hold harmless (including any attorney's fees, costs or liabilities) the OWNER from any workers' compensation claims, for any reason, by an employee of CONTRACTOR, any subcontractor, or other individual, including such matters as a claim that the OWNER is a joint-employer. [See also, paragraph 23. Insurance].

CONTRACTOR has an affirmative obligation to maintain records showing the name and identification of any person (for CONTRACTOR or a subcontractor) working on the project, including a copy of a current I-9 Verification.

10. BACKGROUND CHECKS -- The project involved with the Work primarily involves access to school properties where students and others, of all ages, may be present. CONTRACTOR must comply with all school district, school, or state and local rules and laws regarding access to property. CONTRACTOR, at its expense, must conduct a background check for each of its employees, as well as for the employees of its subcontractors, who will provide services to OWNER (collectively "Contractor Employees"). The minimum background check process shall include, but not be limited to, the following checks:

   a) Social Security Number (SSN) Validation and Address History
   b) National Criminal Database
   c) County Felony and Misdemeanor (for past 7-year residence history)
   d) National Sexual Offender Registry Search

The background check must be conducted prior to initial access by CONTRACTOR'S Employees. CONTRACTOR must keep and maintain the background check records, including all signed waivers by the Contractor Employees. If a Contractor Employee separates employment from the CONTRACTOR, for any reason, the Contractor Employee must undergo another background check prior to regaining access to any project of OWNER. OWNER has a right to audit a CONTRACTOR's background check process, and records, to ensure compliance with OWNER standards, at any time.

Additionally, CONTRACTOR shall notify all Contractor Employees, in writing, that the Contractor Employee has the responsibility to self-disclose any misdemeanor or felony convictions that occur while employed with CONTRACTOR, or subcontractor, within three business days of the conviction. [For purposes of this provision, "conviction" includes, a court finding of guilty, a plea bargain arrangement, diversion or probationary agreement, and pleas of guilty or no contest]. The conviction must be reported to the CONTRACTOR, and if reported to the CONTRACTOR, it is the CONTRACTOR's responsibility to notify the OWNER within three days of learning of the conviction. If at any time it is discovered that any Contractor Employee has a criminal record that includes a felony or misdemeanor, the CONTRACTOR is required to inform the OWNER, and the OWNER will assess the circumstances surrounding the conviction, time frame, nature, gravity, and relevancy of the conviction to the job duties to determine whether the Contractor employee will be placed on an OWNER's project. The OWNER may withhold consent at its sole discretion. Failure of the CONTRACTOR to comply with the terms of this paragraph may result in the termination of its contract with the OWNER. CONTRACTOR shall indemnify and hold harmless, the OWNER, (including any attorneys' fees, costs or liabilities) for any claim, including but not limited to, wrongful or negligent hiring, negligent retention, negligent endangerment, or claims related to violations of state or local rules or laws regarding access to students or school properties.

11. CONTRACTOR STATUS.

   a) CONTRACTOR is an independent contractor. This AGREEMENT is based upon specific projects as determined by the
   OWNER and it is not for an indefinite period of time, nor does the AGREEMENT create a continued relationship. The OWNER may require a separate, new, or revised agreement for each project. Contracting for more than one project using this AGREEMENT shall be for convenience only and shall not be seen as creating an indefinite

its discretion.
CONTRACTOR affirmatively states that it is an independent business engaged in the type of work involved with this AGREEMENT, openly contracts with other businesses or entities for similar work, and is not financially dependent upon work contracted with the OWNER.

b) In most instances, the OWNER does not maintain a business office or other place of business in the locale or region where the project work occurs, does not maintain a workforce to complete the project work, does not maintain the equipment or inventory for the project work, and does not regularly operate business in the locale of the project work, but for the contracted project and any ongoing maintenance and use of the project work.

c) The CONTRACTOR acknowledges that the project work may arise out of government contracting, and that as a contractor to the OWNER, the CONTRACTOR shall be subject to certain government requirements, regulations, guidelines, local fees or charges or labor rates, including prevailing wage requirements, and changes or modifications of those requirements, regulations, guidelines, local fees or charges or labor rates, including prevailing wage requirements. Thus, CONTRACTOR agrees to comply with any and all government regulations as a contractor to the OWNER, and assure compliance with any subcontractors to the CONTRACTOR.

12. EMPLOYMENT COMPLIANCE -- The CONTRACTOR shall maintain written employment policies and procedures and adequately publish those policies and procedures to its employees.

   a) Policies must comply with the federal, state and local laws;
   b) Compliance with all "posting" of notices of employment laws and rights for employees;
   c) Legally compliant EEO policies, including, but not limited to, policies against sexual or other harassment;
   d) Legally compliant EEO policies regarding the non-discrimination of employees based upon sexual orientation, gender identity, or similar protected status;
   e) Legally compliant ADA disabilities policy, including language to advise employees of the "interactive process" to review any disabilities issues or accommodations;
   f) Legally compliant FMLA or other required Leave policies;
   g) Active and continuous compliance with employment immigration laws, including the maintenance of I-9 Verification Forms for each employee;
   h) Use of the E-Verify system when reasonably possible, or if required by government contracting standards;
   i) Maintaining workers' compensation insurance in compliance with the applicable state laws;
   j) Compliance with EEO-100 reporting requirements or other similar requirements under state or local law;
   k) Compliance with all OSHA and work safety laws and regulations;
   l) Compliance with all wage and hour laws, including minimum wage, overtime and state wage payment laws;
   m) Immediate compliance with any request from the OWNER to obtain the records
   n) showing compliance with these employment standards, and to allow a reasonable audit of compliance by the OWNER or its designated representative;
   o) Requiring the same employment compliance standards for any subcontractor and
   p) obtaining all applicable I-9 Verification Forms for any person working on the project, and insurance certification for workers' compensation insurance. [Also, reference Background Checking provisions and other provisions in this AGREEMENT related to subcontractors].

13. INSPECTION AND APPROVAL -- The Work shall be subject to inspection and approval by OWNER. Upon substantial completion, CONTRACTOR shall complete any portions of the Work determined to be incomplete by OWNER within five (5) business days.

14. PERFORMANCE BY OTHERS -- OWNER reserves right to have work on the Project outside CONTRACTOR'S Scope performed by others, but such work shall not materially interfere with CONTRACTOR in the Work. OWNER, in all Contracts with others, shall require that they and all their subcontractors or suppliers at any tier coordinate their work with CONTRACTOR's Work under this AGREEMENT.

15. HAZARDOUS MATERIALS -- Should Contractor encounter a hazardous material or substance, CONTRACTOR, upon recognizing the condition, shall immediately stop Work in the affected area and report the condition to OWNER. Upon receipt of such notice, OWNER shall obtain the services of a licensed laboratory, to verify the presence or absence of the material or substance reported by CONTRACTOR and, in the event such material or substance is found to be present, may separately contract to cause it to be rendered harmless or removed by a qualified abatement contractor.

shutdown, delay, startup and additional Work due to Hazardous Materials.

16. ARCHAEOLOGICAL OR HISTORICAL DISCOVERIES -- Should CONTRACTOR encounter prehistoric artifacts, burials, remains of dwelling sites, paleontological remains, shell heaps, land or sea mammal bones, tusks, or other items of historical significance, CONTRACTOR, upon recognizing the condition, shall immediately stop Work in the affected area and report the condition to the OWNER. Upon receipt of such notice, OWNER may obtain the services of a qualified archeological expert, to evaluate and advise OWNER as to appropriate actions and compliance with applicable permits, laws or regulations regarding such discovery. Based upon such advice, OWNER may engage separately contract with an appropriately licensed and qualified contractor, to deal with such discovery, and direct CONTRACTOR in writing on any actions to be taken by CONTRACTOR with respect to such discovery. CONTRACTOR shall be entitled to equitable adjustment of the Unit Prices and Contract Time for additional costs of shutdown, delay, startup and additional Work occasioned by such discovery.

17. ECOLOGICAL ZONES -- Should CONTRACTOR encounter any ecological zone, requiring special treatment, including without limitation, under the requirements of any applicable permits, laws or regulations, CONTRACTOR, upon recognizing the condition, shall immediately stop work in the affected area and report the condition to the OWNER. Upon receipt of such notice, OWNER may obtain the services of an appropriately qualified and licensed consultant, to verify the ecological condition reported by the CONTRACTOR, in the event such is found to be present, to evaluate and advise OWNER as to appropriate actions and compliance with applicable permits, laws or regulations regarding such ecological zone. OWNER may engage an appropriately licensed and qualified separate contractor, to abate or apply special treatment to such ecological zone, and shall direct CONTRACTOR as to how CONTRACTOR shall coordinate its Work with such ecological zone. CONTRACTOR shall be entitled to equitable adjustment of the Unit Prices and Contract Time for additional costs of shutdown, delay, start-up and additional Work due to measures required to address such ecological zone.

18. OWNERSHIP OF DESIGN DOCUMENTS -- All Design Documents, Contract Documents and Submittals (including, without limitation, all copies thereof) are and shall remain the sole and exclusive property of OWNER and OWNER shall solely and exclusively hold all copyrights thereto. Without derogation of OWNER's rights under this section, OWNER hereby grants CONTRACTOR non-exclusive license to use and reproduce applicable portions of the said documents, as appropriate to and for use in the execution of the Work, but for no other purpose.

19. WARRANTY -- CONTRACTOR warrants its work against defects for a period of 12 months from Substantial Completion of the Work, defined as that date when the Work is usable by the OWNER for the purpose intended. This Warranty is in lieu of any other warranty or guarantee, express or implied, except with respect to latent defects. Upon OWNER's written notice of defect in the Work, given by OWNER to CONTRACTOR during said 12-month period, CONTRACTOR will repair or replace defective Work in as short of a time-frame as reasonably possible.

20. SUSPENSION

    20.1 SUSPENSION BY OWNER. OWNER may order CONTRACTOR to suspend all or a portion of the Work under this AGREEMENT. OWNER shall pay to CONTRACTOR all increased costs incurred by CONTRACTOR as a result of OWNER's suspension, plus a ten percent (10%) Contractor's Fee. The Contract Time shall be equitably extended for such a suspension.

    20.2 SUSPENSION BY CONTRACTOR. CONTRACTOR shall have the right to suspend the Work, or any part thereof, when severe weather conditions or soft soils in warmer weather make progress impracticable, severely impede productivity or put safety of personnel or equipment in jeopardy, as determined by CONTRACTOR, in its reasonable discretion. CONTRACTOR will recommence any of the Work so suspended, when it determines in its reasonable discretion that more favorable conditions exist. The Contract Time shall be equitably extended for such a suspension, provided that CONTRACTOR provides OWNER written notice of such suspension within 2 business days after such suspension commences.

21. DEFAULT; TERMINATION -- If CONTRACTOR commits any material breach, fails or neglects to carry out the Work in accordance with this AGREEMENT, fails to perform any provision of this AGREEMENT, fails to prosecute the Work with sufficient laborers and equipment to ensure its completion within the time specified for completion, or shall be dissolved, have entered against it an order for relief in an involuntary case under the Federal Bankruptcy Laws or commence a voluntary case thereunder, make an assignment for benefit of creditors or petition to take advantage of any state or federal insolvency statute, or fail to pay its obligations as they become due, or shall cause or be the

omission give OWNER reasonable cause to doubt CONTRACTOR's ability to timely, fully, and properly execute its obligations hereunder, or diminish the reputation of OWNER, any such act or omission shall constitute a "default". OWNER shall have sole discretion in determining if such a default exists.

22. TERMINATION FOR CONVENIENCE -- OWNER may terminate this Agreement, in whole or in part and at any time, by written notice to CONTRACTOR. In such event, CONTRACTOR shall be entitled to recover its reasonable direct costs incurred prior to the termination, together with any demobilization expenses or other costs or expenses incurred by CONTRACTOR, plus a ten percent (10%) Contractor's fee.

23. INSURANCE -- CONTRACTOR shall provide the OWNER with a certificate(s) of Insurance that insures the CONTRACTOR for all foreseeable risks and liabilities associated with this Agreement:

- General Liability Insurance (CGL): Commercial general liability on an occurrence coverage form. The limits of liability shall not be less than:
    - $1,000,000 each occurrence (combined single limit for bodily injury and property damage);
    - $1,000,000 for personal and advertising injury liability; o $2,000,000 aggregate on products and completed operations; o $1,000,000 property damage o $2,000,000 general aggregate.
- Automobile Liability Insurance: o $1,000,000 Combined single limit each accident for bodily injury and property damage. Include coverage on all owned, hired, and non-owned automobiles.
- Workers Compensation (Statutory) and Employer's Liability: o $1,000,000 each accident for bodily injury by accident; o $1,000,000 each employee for bodily injury by disease; o $1,000,000 policy limit for bodily injury by disease.

Additionally: (a) certificate/endorsement showing RLM Underground, LLC as a named, additional insured; and (b) certificate/endorsement showing any subcontractors as additional insureds.

Additionally: (a) CONTRACTOR'S insurance - certificate/endorsement showing a "waiver of subrogation" from any subrogation demand or claim against RLM Underground, LLC; and (b) every SUBCONTRACTOR'S insurance – certificate/endorsement showing a "waiver of subrogation" from any subrogation demand or claim against RLM Underground, LLC.

The proof of insurance, endorsement of additional insureds and waiver of subrogation, in no manner, waives, modifies or sets aside the additional obligations under the terms of this AGREEMENT regarding indemnification and hold harmless, to the benefit of OWNER.

24. TAXES -- CONTRACTOR agrees that it shall be responsible for its own income taxes, withholding and all employment related taxes (Federal, State or Local) for all employees of CONTRACTOR and all applicable sales taxes and excise taxes, and that OWNER shall not be responsible for such amounts.

25. APPLICABLE LAW -- This AGREEMENT shall be governed by and construed in accordance with the laws of the State of Connecticut, without regard to conflict of law principles. If the CONTRACTOR brings a lawsuit for breach of contract, or based upon any alleged liabilities arising out of this AGREEMENT, or where the AGREEMENT, or any part of the AGREEMENT, involves the basis or an element of the alleged claim, the exclusive jurisdiction for such cause of action shall

the jurisdiction where the project work is occurring, the place of business of the CONTRACTOR, or the courts of KS. If the action is brought in the courts of KS, CONTRACTOR agrees to submit to the exclusive jurisdiction of KS. If the OWNER brings an injunctive or equitable action again the CONTRACTOR, the CONTRACTOR agrees to waive the posting of any type of bond to obtain temporary or permanent injunctive relief.

26. COMPLIANCE WITH LAWS -- OWNER and CONTRACTOR shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and all restrictions and encumbrances applicable to the Project or the Work.

27. RIGHTS AND REMEDIES -- Duties and obligations imposed by the AGREEMENT, and rights and remedies available hereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

28. SURVIVAL -- Should any provision of this AGREEMENT, at any time, be in conflict with any law, regulation or ruling or be unenforceable for any reason, then such provision shall continue in effect only to the extent that it remains valid. In the event that any provision of this AGREEMENT becomes less than operative, the remaining provisions shall nonetheless remain in full force and effect.

29. SUCCESSORS AND ASSIGNS -- OWNER and CONTRACTOR respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the AGREEMENT. Except as expressly provided herein, CONTRACTOR shall not assign, transfer or delegate any rights or obligations under this AGREEMENT without OWNER's prior written consent. CONTRACTOR shall not use this Agreement as a form of collateral or obligation to a third party or in any manner create an encumbrance on or against this AGREEMENT.

30. WRITTEN NOTICE -- Written notice shall be deemed to have been duly served upon the receiving party, if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; if actually received by such person, if sent and received by electronic facsimile or email; or if delivered at, or sent by registered or certified mail or by courier service to the last business address known to the party giving notice

THE ABOVE-NAMED PARTIES SO AGREE, effective the _____ day of July 20 2021

Consultant

DKG Communications LLC

By: _____

Title: CEO

Date: JULY 2021

Address: 11566 Canopy Loop FT. Myers Fl 33913

Client

RLM Underground LLC

By: _____

Title: Operations Specialist

Date: July 22,2021

Address: 15983 W 172nd Terr. Olathe, KS 66062

# EXHIBIT B

**The Jude Law Firm**

Cassandra D. Jude, Esq.
The Jude Law Firm, PLLC

Phone: 239-933-1838 | Fax: 239-236-5755

3236 Forum Blvd #1240, Fort Myers, FL 33905

September 22, 2023

RLM Underground, LLC
1121 Douglas Ave,
Kansas City, KS 66103
smudd@rlmunderground.com
lee.mudd@rlmunderground.com

Re: Return of Retainage – DKG Communications, LLC

Dear RLM Underground, LLC,

I represent DKG Communications, LLC, a respected subcontractor who entered into a contractual agreement with RLM Underground, LLC, on July 22, 2021. Pursuant to our client's rights under the aforementioned contract, and specifically referencing Clause 5 of the agreement, I write this letter to formally request the return of the 10% retainage held by your company.

As stipulated in the contract, the 10% retainage on the progress payment is to be released 365 days from the original invoice date. As of today's date, the 365-day period has passed, and we respectfully demand that the full 10% retainage amount be returned to our client without any further delay.

Our client has upheld their end of the agreement in a timely and professional manner, and it is now incumbent upon RLM to fulfill its contractual obligations. For ease of reference, we are attaching a copy of the contract with this letter.

It is essential to emphasize that DKG values the professional relationship that has been established with RLM and is optimistic about future collaborations. Thus, it is in both parties' interests to resolve this matter amicably and promptly. By returning the retained amount as per the contract's terms, we believe that the trust and integrity of our working relationship can remain intact.

Kindly process the return of the retainage immediately. If there are any concerns or if you require further clarification regarding this matter, please do not hesitate to contact my office. We expect this matter to be resolved within 14 days from the receipt of this letter.

Thank you for your prompt attention to this matter, and we anticipate a swift resolution that maintains the positive and collaborative nature of our business relationship.

Sincerely,

*Cassandra Jude*

Cassandra D. Jude, Esq.

Enclosure: Contract Agreement between DKG Communication, LLC and RLM Underground, LLC

cc: DKG Communications, LLC